**67 P.(2d) 293**

**In re BLATT et al.**

**STATE v. BLATT et al.**

No. 4199.

Supreme Court of New Mexico.

April 16, 1937.

A. M. Fernandez, Sp. Tax Atty., of Santa Fé, Quincy D. Adams, Asst. Atty. Gen., and David W. Carmody, Asst. Dist. Atty., of Santa Fé, for the State.

C. C. Catron and Wilson & Watson, all of Santa Fé, for respondents.

ZINN, Justice.

On a writ of certiorari directed to the clerk of the district court of the First judicial district, for the county of Santa Fé, directing said clerk to return to this court for review the record in the instant case, the transcript of record was filed here on February 18, 1936.

From this record it appears that on August 9, 1935, Morris and Johanna Blatt (who will be referred to in this opinion as the petitioners), the owners of certain property located in the city of Santa Fé, filed with the district court of Santa Fé county their petition alleging in two counts. In the first count it is alleged that the property was "pretendedly but erroneously and illegally assessed" for the year of 1934 in the total sum of $54,925. This total made a tax charge of $1,629.93. This amount the petitioners paid under protest. They also alleged that the value so placed on their property for tax purposes for the year of 1934 is "inequitable, unjust, arbitrary, excessive, erroneous and illegal." The petition states that the same is filed within sixty days from the date of the payment of said taxes under protest. They

pray the court to investigate the matters contained in the petition, hear the evidence, and to enter a final decree directing a correction of the assessment, and refund of any sums which the court may find to have been illegally and erroneously charged and paid.

In the second count of the petition, the petitioners allege (in the same terms as in the first count) that their property for the year of 1933 was assessed at $52,637.50 which was subsequently reduced to $47,374.50, at which reduced figure the tax charged amounted to $1,645.77. The petitioners also allege in the second count that they appeared before the county board of equalization seeking a correction of the claimed erroneous and illegal valuation, but to no avail, and did thereafter appeal the matter from said ruling of the county board of equalization to the State Tax Commission, with the same result on appeal. The petition alleges that the State Tax Commission failed to take action within due time, and that the petitioners paid under protest the tax charge for 1933 in order to enable the petitioners to have the court inquire into and review the illegality of the assessment in accordance with Laws 1933, c. 143. The petition alleges that due to a failure on the part of the State Tax Commission to act within sixty days after the payment of the taxes under protest, the petitioners did not bring the action in the district court within the sixty-day period provided by said statute. They prayed equitable relief in the event the court

could not assume jurisdiction under chapter 143, supra.

The district attorney of the First judicial district entered his appearance and accepted notice of the filing of the same and consented that the court hear and determine the matters set out in the petition and to enter such judgment as the facts might justify.

On December 2, 1935, there was filed an order of the district court, which in substance shows that the cause was heard on the 30th day of November, 1935, upon the petition and the appearance, waiver, and consent of the district attorney. The court recites that the petitioners appeared in person and by their counsel and that the court heard the evidence.

The order recites that the court has jurisdiction of the parties and of the subject-matter, both as a court of equity and under and by virtue of chapter 143 of the Session Laws of 1933. The order then recites in the terms of the petition that for the years of 1933 and 1934, the real estate and improvements of the petitioners were assessed upon the tax rolls, and as to the 1933 tax assessment, the petitioners appealed the matter to the State Tax Commission, where the matter remained pending and undetermined on the day the first half of taxes became delinquent and in order to avoid the accrual of penalties and interest on the first half of taxes for 1933, on December 28, 1933, the petitioners paid the sum of $750 to the county treasurer by check under protest, said check having in-

dorsed thereon: "Payment of taxes under protest, the same having been erroneously and illegally charged." Also "payment of this check made under protest. Blatt Building Company, per M. Blatt." On the 2d day of June, 1934, the appeal still being undetermined, the second half of taxes for the year 1933 were paid in the same manner; the sum being $895.77.

The order further recites that on the 10th day of June, 1935, petitioners paid the taxes for the entire year 1934 to the county treasurer, in the sum of $1,629.93, by check, under protest; said check having indorsed thereon: "Payment under protest of taxes as per attached statement. Payment of 1934 taxes on building and lot North Palace Avenue: East First National Bank: South Catholic Publishing Company; West Blatt. Also Catron Building, North Palace Avenue; West Shelby Street; South First National Bank; East Blatt. This payment is made under protest because of unjust, excessive, inequitable and arbitrary valuations placed upon the above premises for tax purposes. Said tax having been erroneously and illegally charged."

Paragraphs 7 and 8 of said order read as follows:

"7. That such assessments and taxes charged against petitioners and their said property for the years 1933 and 1934 inclusive are erroneous, excessive, inequitable, unjust and illegal.

"8. That the value of said premises for tax purposes for the said years of 1933 and 1934 inclusive are: Real Estate $18,040.00.

Improvements $26,350.00. The same as the amounts assessed on the tax rolls of Santa Fé county upon said premises for the year 1932."

The order then goes on to recite that the petitioners by the payment of the taxes for 1933 and 1934, and under protest, are entitled to a refund from the treasurer of Santa Fé county in such amount as the difference between the amount paid under protest and the true tax computed on the values found by the trial court. The court in its order then proceeds under the provisions of Laws 1933, c. 86, to fix the assessment and valuation of the petitioners' property for tax purposes not only for the year 1934 but to continue for the years of 1935, 1936, and 1937. The order then recites that:

"It further appearing to the court that since the filing of the petition in this cause the assessor of Santa Fé County has for the year 1935 assessed the lands and improvements here involved in a sum far in excess of the values herein found by the court as the true tax values for the year 1934, and petitioners having in open court moved the court that their said petition be extended to include their taxes for 1935 so as to avoid the filing of another petition and effectuating the provisions of said 1933 statute, Chapter 86 of the New Mexico Session Laws, which said motion is hereby granted, the court finds the following additional facts:

"11. That such assessments and taxes charged against petitioners and their said property for the year 1935 are erroneous, excessive, inequitable, unjust and illegal.

"12. That the value of said premises for tax purposes for the year 1935 is: Real Estate $18,040.00. Improvements $26,350.-00. The same as the amounts herein ordered assessed on the tax rolls of Santa Fé County upon said premises for the year 1934."

The order directed the county treasurer, upon the correction being made, to total the amount of tax due from the petitioners for the years of 1933, 1934, and 1935 and to give petitioners credit for the three amounts of $750, $895.77, and $1,629.93 upon the amount of taxes so computed to be due and receive from the petitioners a sufficient amount in addition to fully pay up any balance due for their taxes for the year 1935, and to then mark the taxes for the three years paid and issue his receipts therefor.

Thereupon the State of New Mexico and the State Tax Commission, by Quincy D. Adams, Assistant Attorney General, and A. M. Fernandez, special tax attorney, filed a motion praying that the above order of the court be set aside and vacated. The grounds for said motion are as follows:

"I. Said order is irregular and void for the reason that the complaint upon which said order is founded wholly fails to state a cause of action either in law or in equity in that no facts whatsoever are alleged showing that said taxes and the assessments upon which they are based were in-

equitable, unjust, arbitrary, excessive, erroneous and illegal, no allegation of any kind is made in said petition as to the actual value of said property on any of the years therein mentioned; and no allegation of any kind and no mention whatsoever is made in said petition as to the assessment for the year 1935.

"II. The petition in said cause shows upon its face, that it was attempted to be filed and the jurisdiction of this court attempted to be invoked under the provisions of Chapter 143, Session Laws of 1933, whereas this court under said Chapter had no jurisdiction to enter said order for the following reasons:

"(a) Said complaint has no allegations whatsoever showing that the taxes charged under said assessments for the year 1933, 1934 and 1935 were erroneous or illegal.

"(b) This court is without authority to review the judgment of the taxing officials on the question of the value of said property for said years under said Chapter 143, Session Laws of 1933.

"III. That said order is irregular and void in that it attempts to reduce the valuation for the year 1933, and to require the county treasurer to credit moneys paid under protest on taxes for said year on taxes for another year, to-wit, 1935, although the petition shows on its face and by the exhibits attached thereto that more than one year had elapsed since such moneys were received by the treasurer, and before said petition was filed, and notwithstanding said moneys have been by the requirements of the statute under which said suit was brought legally distributed to the various funds of the city, county and state.

"IV. This court was without any equitable jurisdiction in rendering said order for the following reasons:

"(a) That the proceeding filed in this court is a special statutory proceeding and not a suit in equity.

"(b) The petition wholly fails to allege any facts sufficient to constitute a cause of action in equity, and wholly fails to allege any facts entitling petitioners to equitable relief.

"(c) The state of New Mexico, the State Tax Commission and the County Treasurer of Santa Fé county are necessary and indispensable parties defendant to a suit in equity for the reduction of valuations or the abatement of taxes, and that neither of them were made parties or served with notice or process of any kind, and have not had an opportunity to be heard."

This motion was followed by a supplemental motion, likewise directed at said order, which specifically added as grounds to the original motion, the following:

"1. That as to the assessment for the year 1934, no allegation is made in the petition showing that any appeal was taken from the action of the assessor in making said assessment to the board of equalization or to the State Tax Commission, and that said petition as to said year fails to state any cause of action whatever, that said complaint cannot be

amended in this respect so as to state a cause of action for the reason that there was in fact no appeal made to the State Tax Commission as to said assessment.

"2. That hearing on this cause was had upon an appearance on the part of the District Attorney waiving notice of hearing, but without pleading in any way in response to said petition; that the State was in no way represented in said hearing, and that said appearance of the District Attorney is ineffectual to waive the objections in our original motion and herein set out.

"3. That the State has a meritorious defense to said petition."

Soon after the above motion was filed, the district attorney (by his assistant) also filed a motion in said cause, which reads as follows:

"It having been called to the attention of David W. Carmody, Assistant District Attorney of the First Judicial District of the State of New Mexico, that an order granting relief in the above entitled cause was entered without notice of hearing to the State Tax Commission, and that no stenographic record was taken of the testimony of said hearing, and that a motion was filed by the State Tax Commission and the office of the Attorney General to vacate said order; that even though said order granting relief specifically reserved the allowance of an appeal, said appeal is without avail in as much as no record whatsoever was taken at the said hearing, and it would, therefore be impossible for the Supreme Court to pass upon the evidence supporting the petition herein, and that at the time that the attorney for the petitioners requested your movant to sign the waiver heretofore filed herein, the said attorney verbally assured your movant that notice would be given him of the said hearing in order that your movant could be present thereat,

"Therefore, comes now said Assistant District Attorney and joins in the said motion to vacate, and prays that said order be set aside and that a new hearing with due notice to the State Tax Commission be ordered.

"[Signed]   David W. Carmody
"Assistant District Attorney."

The record is silent as to whether or not the district attorney ever received notice from the attorney for the petitioners of the hearing on the petition or if attorney for petitioners did verbally agree to give the district attorney such notice. It appears from the record, however, that the same day the district attorney filed his motion, the court entered its order as follows:

"The above entitled cause having come for hearing before the court, upon the motion and supplemental motion of the state of New Mexico and the State Tax Commission, for an order setting aside and vacating the judgment heretofore on the 2nd day of December, 1935, entered in the above entitled cause, and the court having heard arguments of counsel, and being fully advised in the premises, is of

the opinion that said motion is not well taken:

"It is, therefore, ordered that said motion and supplemental motions, and the motion of the assistant district attorney be, and they are hereby overruled, to which the state excepts.

"Done at Santa Fe, New Mexico, this 29 day of January, 1935.

"[Signed]  M. A. Otero, Jr.
                "District Judge
"O. K.
"[Signed]  C. C. Catron."

There is thus presented for our review, on certiorari, questions involving the interpretation of Laws 1933, c. 143, its purpose and object.

The state assigns seven errors to the district court. We group the subject-matter of the claimed errors under three separate groups and treat them in that manner. Each will deal with the jurisdiction of the court as to the taxes for a particular year and the availability of chapter 143 as a vehicle to an aggrieved taxpayer.

We start with the taxes for the year of 1933. The state contends that Laws 1933, c. 143, contemplates the single relief of recovery of specific moneys paid under protest, and that a failure to bring the action or proceeding within sixty days is fatal to the jurisdiction of the court; that a failure to file suit within sixty days bars the right as well as the remedy. If this be correct, then the order as to taxes for the year of 1933 was void, and the direction to apply the refund as a

credit on the 1935 taxes of the petitioner (or the 1934 taxes as argued by petitioner) was without authority.

Laws 1933, c. 143, is an act to amend Comp.St.1929, § 141-404, relating to payment of taxes paid under protest. This 1933 statute reads as follows:

"Section 1. That Chapter 141, Section 404, of the 1929 Compilation of the Laws of the State of New Mexico be and is hereby amended to read as follows:

"141-404. Erroneous payments. Taxes paid voluntarily to any officer authorized to collect the same shall not be refunded or rebated in any instance. Where any person shall pay any tax, penalty, interest, or costs under protest, claiming the same to be erroneously or illegally charged, he may present his claim to the district court by petition, and it shall be the duty of the district attorney, upon notice, to appear in response to such petition without the necessity of the issuing or service of any process, and the court shall hear and determine the matter and enter such judgment as the facts may require. Taxes paid under protest shall, by the treasurer, be held in a suspense fund until legal proceedings for the determination of the right thereto shall have been concluded, at which time they shall be disposed of in accordance with the final judgment in such proceedings; Provided, that in case no legal proceedings shall be effectively begun within sixty days from the date of the payment thereof, such moneys shall thereupon be funded and distributed as

other taxes, and shall thereafter not be subject to repayment."

The only change this statute made in Comp.St.1929, § 141-404, is found in the proviso that legal proceedings must be effectively begun within "sixty days," whereas the time formerly was six months. Board v. Atchison, T. & S. F. Ry. Co., 40 N.M. 6, 52 P.(2d) 126.

In the case of Los Alamos Ranch School v. State, 35 N.M. 122, 290 P. 1019, 1020, upon the question of whether an appeal would lie to this court in a proceeding instituted in the district court pursuant to the provisions of Comp.St. 1929, § 141-404, we said: "Under section 141-404, the petition is presented to the district court by the taxpayer having paid the taxes under protest. The district attorney, upon notice, becomes the adversary of the taxpayer, and must represent the taxing authorities. *The petition, to be availing, must be presented within six months after the taxes are paid under protest.*" (Italics ours.)

The specific question now before us was not passed upon in the Los Alamos Ranch School Case. We believe, however, the court in its dicta forecast the correct view.

In the instant case the taxes for the year 1933 were paid on June 14, 1934. The petition was filed on August 14, 1935, one year and sixty days after payment under protest.

At the common law, the courts were powerless to give relief against erroneous judgments of assessing bodies. If a fraud be charged the taxpayer may invoke the aid of a court of equity.

"The wrongs which spring from errors on the part of assessors are, in a large proportion of all the cases, as little susceptible of correction, unless the legislature shall have provided a remedy by statute. Courts of equity have but a limited jurisdiction, extending to few cases besides those in which the impelling motive on the part of the assessors has been to do injustice and inflict injury. The chief protection of the citizen must at last be sought in the intelligence and integrity of public officers, and where these fail, as too often they do, the injury must frequently prove irreparable. * * *" See section 1610, c. 27, Cooley Taxation, vol. 4, p. 3218.

Again: "The power of courts to interfere in matters of taxation, except as permitted by statute, is limited. They may review questions of law affecting taxes, including the question as to what are legislative subjects of taxation, and whether taxes are for a public purpose, and may inquire into the jurisdiction of assessors and boards of equalization. They may review questions of situs of property for purposes of taxation, and may review assessments which are arbitrary or so excessive or discriminatory as to be constructively fraudulent. So valuation is reviewable by the courts where it was arrived at in a whimsical, capricious or unwarrantable way." See section 1612, c. 27, Cooley Taxation, vol. 4, pp. 3219 and 3220.

If the Legislature especially empowers the court to give relief against erroneous judgments of assessing bodies, then the court may act to give such relief. However, the court can only act in the manner provided by the statute and under such conditions as are prescribed by the statute. If a right is granted to an aggrieved taxpayer to recover taxes paid under protest, and a remedy is provided, the right must be exercised in the manner provided by the statute and the remedy must be sought in like manner.

"The rule is well settled in this country that whenever a statute grants a right which did not exist at common law, and prescribes the time within which the right must be exercised, the limitation thus imposed does not affect the remedy merely, but is of the essence of the right itself, and one who seeks to enforce such right must show affirmatively that he has brought his action within the time fixed by the statute; and if he fails in this regard he fails to disclose any right to relief under the statute. 25 Cyc. 1398; Savings Bank v. Powhatan Clay Mfg. Co., 102 Va. 274, 46 S.E. 294, 1 Ann.Cas. 83; Lambert v. Ensign Mfg. Co., 42 W.Va. 813, 26 S.E. 431; Taylor v. Cranberry I. & C. Co., 94 N.C. [525] 526; The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Hill v. Board of Supervisors, 119 N.Y. [344] 347, 23 N.E. 921.

"In Finnell v. Southern Kan. Ry. Co. (C.C.) 33 F. [427] 428, the court said: 'There is also another class of cases in which a cause of action which does not exist at common law is created by the laws of a state. Causes of action of that character only exist in the manner and form and for the length of time prescribed by the statutes of the state which created them.'

"In speaking of a statute very similar to the one now before us, the Supreme Judicial Court of Massachusetts, in Wheatland v. City of Boston, 202 Mass. 258, 88 N.E. 769, said: 'It is to be observed that this is not a mere statute of limitations. It establishes certain conditions precedent to the maintaining of an action to recover back a tax. One of these is, in substance, that the payment must have been made under protest, or under certain modes of compulsion mentioned in the statute; the other is that the action shall have been brought within the time specified. Compliance with the latter of these conditions is no less essential to the right of action than compliance with the former.'"

Dolenty v. Broadwater County, 45 Mont. 261, 122 P. 919, 922.

Without chapter 143, the petitioners could not have recovered. Chapter 143 gave them a right and a remedy. They had the right to pay their taxes under protest claiming the same to be "erroneously or illegally" charged. (We shall come to the meaning of the quoted phrase later.) The remedy provided was the presenting of a petition to the district court, which court should hear and determine the matter and enter such judgment as the facts

may require. The right is granted and the remedy provided if the action is brought within sixty days from the date of payment. Failure to bring such action within the time prescribed by statute withdraws the right. Without the right no remedy is available.

"Compliance with those conditions is a necessary condition precedent to an exercise of the right thus conferred." Dolenty v. Broadwater County, supra.

No right and no cause of action exists after the sixty days provided by the statute have elapsed. The Legislature has prescribed the conditions under which a taxpayer who thinks himself injured can have his injury redressed. The court was without jurisdiction to even entertain the suit. It necessarily follows that any order it entered in respect to the 1933 taxes was void.

As to the 1934 taxes, we are brought to a determination of the actual meaning and interpretation of chapter 143, and more specifically the meaning of the phrase "erroneously or illegally charged" as applicable to the instant case.

The petitioners paid their taxes under protest and within sixty days brought a suit seeking to recover such "tax, penalty, interest, or costs." The statute says the petitioners may recover such items if they are erroneously or illegally charged. The court is directed to enter such judgment "as the facts may require."

A brief review of this kind of legislation will aid in a determination of the purpose and scope of chapter 143. Section 4070, Comp.Laws 1897 (L.1882, c. 62, § 58), provided for the refunding to the taxpayer of all taxes paid which were thereafter found to be "erroneous or illegal, whether the same be due to erroneous or improper assessment, or improper or irregular levying of the tax, to clerical or other irregularities." This was repealed, and in its stead there was enacted Laws 1913, c. 84, § 26 (1915 Code, § 5479), which provided for the refund of erroneous payments which are found to be "erroneously or illegally charged." 1915 Code, § 5479, was repealed by Laws 1921, c. 133, and replaced by section 404 of the same act. The 1921 act is phrased identically as the statute here under consideration, except that it did not contain the provision respecting voluntary payments as provided by the first clause of chapter 143. This first clause was added by an amendment in 1925 (Laws 1925, c. 102, § 22). The final change was made in 1933 shortening the time within which suit must be brought from six months to sixty days. We find throughout this type of legislation a plan to alleviate against erroneous or illegal assessments.

The phrase "erroneously or illegally charged" has a well-established meaning as found in such statutes.

"Statutes expressly provide for refunding in many states. Some of these statutory enactments contain provisions which call for the refunding of taxes in those cases in which taxes illegally assessed are paid

under a mistake of fact, or where there has been some clerical mistake in the assessment or collection of taxes. The term 'erroneously assessed,' as used in such a statute, means an assessment illegal because of a jurisdictional defect and *does not include a mere error of judgment in valuing the property.*" (Italics ours.) Section 1259, c. 20, Cooley Taxation, vol. 3 (4th Ed.) pp. 2501 to 2506, inc.

Under chapter 143, if the charge or assessment be illegal or erroneous, as for example there has been a clerical mistake, double or erroneous assessment, or because the taxing authorities had no right or authority to make the assessment, then it becomes the duty of the taxpayer to pay the amount so assessed under protest, bring suit within the statutory time to correct the tax roll, and recover the amount paid. However, the remedy provided by chapter 143 is not available where the claim by the taxpayer is in effect that the tax charged is excessive. It is only where the party aggrieved claims the defects or errors are jurisdictional, rendering the assessment invalid, that chapter 143 can be invoked to aid the taxpayer.

We do not necessarily hold in the instant case that the judgment of the trial court was based on a claim of excessive assessment solely. It is true that the petitioners did plead that the value of the lands and improvements placed upon their property for taxation purposes for the year of 1934 is inequitable, unjust, arbitrary, and excessive, and that relief was prayed from such excessive valuation. However, we also find the allegation that the real estate and improvements were pretendedly but erroneously and illegally assessed and charged upon the assessment roll, thus bringing the same within the jurisdiction contemplated by chapter 143. The effect of this will be later discussed. At this point we are concerned with the meaning and intent of chapter 143, and in demonstrating the kind of cases contemplated as coming within its scope, we are called upon to show that assessments which are deemed excessive do not come within its scope.

A leading case enunciating the principle that "erroneous assessment" or "illegal assessment" does not mean "excessive assessment" is the case of Clay County v. Brown Lumber Co., 90 Ark. 413, 119 S.W. 251, 252. In the Clay County Case it appears that the assessor had assessed the property in question at $2,000. The Brown Lumber Company having paid the tax, petitioned the county court for a refund, alleging it had been erroneously and excessively taxed the amount so claimed as a refund. The circuit court allowed the refund, from which the county appealed. The cause was reversed. The Supreme Court of Arkansas, said: "As is said in the case of Stanley v. Supervisors of Albany County, 121 U.S. 535, 7 S.Ct. 1234, 30 L.Ed. 1000: 'A party who feels himself aggrieved by overvaluation of his property for purposes of taxation and does not resort to the tribunal created by the state

for correction of errors in assessment cannot maintain an action at law to recover the excess of taxes paid beyond what should have been levied on a just valuation.' When legislation, in accomplishing the necessities of government, makes provision that certain officers or boards shall fix the assessment of property, it does not violate the right of due process of law. Now while, ordinarily, appeal is granted from such officer or board to some court or board of revision, yet, when such boards of equalization are properly constituted, there is no appeal from their decision in simple matters of judgment or opinion as to values, unless appeal is specifically provided for by statute. *2 Cooley on Taxation*, p. 1380; Welty on Law of Assessments, § 158; 21 Ency.Plead. & Practice, 439; 1 Desty on Taxation, 605. And when a mode, in the nature of an appeal, is prescribed by the statute, a failure to invoke the statutory remedy within the time and manner prescribed precludes relief by any other proceedings. 27 Am. & Eng.Ency.Law (2d Ed.) 726; Wells Fargo & Co.'s Express v. Crawford County, 63 Ark. 576, 40 S.W. 710, 37 L.R.A. 371. As is said in the case of Pulaski County Board of Equalization Cases, 49 Ark. 518, 533, 6 S.W. 1, 7: 'The taxpayer must pursue the remedy provided for his relief or abide by the finding of the board.' Randle v. Williams, 18 Ark. 380. This rule applies to all cases of excessive valuation where the assessing officer or board acts within its jurisdiction. *On the other hand, where the defects or errors are jurisdictional,*

*rendering the assessment invalid, the party aggrieved has the right to invoke judicial remedies against the illegal acts of such officer or board."* (Italics ours.)

We find that our system of taxation is similar in many respects to the Arkansas system.

We quote further from this same opinion to illustrate our view: "The term 'erroneous assessment,' as there used, refers to an assessment that deviates from the law and is therefore invalid, and is a defect that is jurisdictional in its nature, and does not refer to the judgment of the assessing officers in fixing the amount of the valuation of the property. If the property paid on was exempt from taxation, or if the property was not located in the county, or if the tax was invalid, or if there was any clear excess of power granted, so as to make the assessment beyond the jurisdiction of the assessing officer or board, then the provisions of Kirby's Dig. § 7180, give the owner a remedy for a refunding of such taxes thus erroneously paid. But a remedy is not given by this section to the party aggrieved by reason only of an excessive assessment or overvaluation of his property."

The case of South Broadway Nat. Bank v. City and County of Denver, 51 F.(2d) 703, 705, was decided by the Circuit Court of Appeals of the Tenth Circuit in 1931, on a suit filed for the recovery of taxes in the sum of $7,160.36 paid to the treasurer of the City and County of Denver. The Colorado statute (Comp.Laws

1921, § 7447) relied upon by the plaintiff in that case provides as follows: "In all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer."

Speaking through Judge Lewis, the Circuit Court of Appeals of this, the Tenth Circuit, said in denying the relief prayed for: "The Colorado statute (section 7447), on which plaintiff relies, permits recovery only when the taxes paid are thereafter 'found to be erroneous or illegal.'" Judge Lewis quotes with approval from the Clay County Case to the effect that an "excessive assessment" is not an "erroneous assessment." Judge Lewis also quoted from the case of Stanley v. Supervisors of Albany County, 121 U.S. 535, 7 S.Ct. 1234, 30 L.Ed. 1000, as follows: "It [the method of assessment as to banks complained of] must sometimes lead also to overvaluation of the shares; but, if so, no ground is thereby furnished for the recovery of the taxes collected thereon. It is only where the assessment is wholly void, or void with respect to separable portions of the property, the amount collected on which is ascertainable, or where the assessment has been set aside as invalid, that an action at law will lie for the taxes paid, or for a por-

tion thereof. Overvaluation of property is not a ground of action at law for the excess of taxes paid beyond what should have been levied upon a just valuation. The courts cannot, in such cases, take upon themselves the functions of a revising or equalizing board." Judge Lewis concludes as follows: "Moreover, an error as to valuation of property for taxation does not go to the question of jurisdiction of the taxing officer, and even if excessive it does not render the tax illegal and void, which is necessary in order to recover in an action at law. Stanley v. Supervisors of Albany County, supra."

In Southern California H. & Mfg. Co. v. Los Angeles County, 49 Cal.App. 712, 194 P. 62, 63, plaintiff sued to recover $781.27 which he alleged to have been erroneously and illegally collected, under section 3804, Political Code (quoted in the case), providing for the refunding of taxes, penalties, or costs "erroneously or illegally" collected. The court in the opinion states that the facts were practically undisputed. The lower court found that in consequence of the mistaken belief on the part of the deputy assessor that plaintiff was not entitled to deductions claimed for unsecured debts, plaintiff's properties were overvalued to the full extent of such assessment, and that in fact there was no balance upon which a tax could be levied, but notwithstanding the court entered judgment for defendant county. In that case, as in this, the plaintiff had not appeared before the board of equalization to object to its assessment.

We quote from the California court: "It is conceded by the appellant that its assessment in excess of the actual cash value of its assessable properties was not caused by an 'clerical error of the assessor,' but that its alleged right to recover the same rests solely upon its contention that such taxes were 'erroneously or illegally collected.' We are unable to sustain the appellant's contention in this regard. We are directed to no action on the part of the officials of the county of Los Angeles which would render the assessment of the plaintiff's property or the collection of the taxes claimed to be due thereon illegal. The plaintiff's said properties were subject to assessment, and the procedure pursued by the county assessor and by the board of supervisors in making said assessment and in levying said tax were admittedly in accord with the provisions of the Political Code relating to taxation. Neither do we think that the assessment and levy and the taxes in question was 'erroneous' within the meaning of the term as used in section 3804 of the Political Code. It is true, as found by the trial court, that the county assessor was mistaken in his conclusion as to the net amount of the plaintiff's properties subject to assessment and taxation; but it does not follow that merely by reason of said mistake the assessment and taxation of said property was erroneously made. The result of this mistake amounted merely to an overvaluation of the plaintiff's properties, or—which amounted to the same thing in effect—an undervaluation of the appellant's deductible debts; and we are cited to no case which goes to the extent of holding that an overvaluation of assessable properties on the part of the assessor is such an 'error' as would entitle the owner of such properties to the remedy provided in section 3804 of the Political Code; but, on the contrary, our attention has been called to a consistent line of decisions by the Supreme Court and District Courts of Appeal of this state, holding that the remedy of the property owner in the event of an overvaluation of his property by the assessor is by application to the board of supervisors of the county sitting as a board of equalization for a revaluation of his property."

We are convinced that Laws 1933, c. 143, in no manner contemplated relief against excessive assessments, and we **so** hold.

Laws 1933, c. 107, provides the manner and method of assessing property in this state. Section 10 thereof provides for assessment of property by the assessor at actual cash value. Section 14 thereof provides when the boards of equalization (the board of county commissioners of each county) shall hear and determine appeals that may be made from the valuation of the tax assessor.

Laws 1933, c. 86, provides that assessment of real property as provided by law shall be final and binding on all taxing authorities and all owners of such property for four successive years, "except

as to right of appeal." The pertinent provisions of said chapter 86, are as follows:

"Section 1. Hereafter all real property subject to assessment and valuation by the assessors of the different counties, including grazing lands, the value of which is fixed by the State Tax Commission, shall be appraised and valued for purposes of taxation once every four years, the first of such valuations to be in the year 1934, the next in the year 1938, and thereafter each four years.

"Sec. 2. All such property shall be assessed and valued at actual market value in the manner and by the authority as now provided by law, except that the value of all such property as finally fixed in the year 1934, and each succeeding fourth year thereafter shall be final and binding on all taxing authorities and all owners of such property for four successive tax years, except as to right of appeal. * * *

"Sec. 7. * * * Any person dissatisfied with any such apportionment shall have the right of appeal to the County Board of Equalization, and the State Tax Commission, to be exercised in the same manner as appeals in the case of contests over valuation of property, but in such case the sole question shall be the correctness of the apportionment of the total value of the divided tract, and in no case shall the total value as fixed and determined be disturbed or changed; and in cases of such appeals the owner or owners of the other portions of the divided tract shall be given five days' notice thereof by registered mail, and when so notified shall be entitled to be heard and shall be bound by the final decision on such appeal. In hearing such appeals, the County Board of Equalization and the State Tax Commission shall have the power to either disallow the same or in the event of the allowance thereof shall make a new apportionment so that the total value of the whole tract under consideration shall equal the value thereof as theretofore fixed."

Laws 1933, c. 104, amendatory of Comp. St.1929, § 141-230, provides for the method of appeals by dissatisfied taxpayers.

These three appeals, one the first Monday in April, one the first Monday in May, and one to the State Tax Commission to be heard at its June meeting (Comp. St.1929, § 141-508), are the only appeals provided. From and after the meeting of the State Tax Commission in June, the assessment fixed by the tax assessor is in law the actual cash value for taxation purposes. There is no method provided by statute in New Mexico, whereby a taxpayer who is aggrieved because of excessive assessment can appeal from the ruling of the State Tax Commission to the courts. The exception is in a case where a court of equity may review upon facts specifically set forth showing the assessment to be so excessive as to be constructively fraudulent, and then only upon a showing that all other remedies designated by the statute have been exhausted.

As this court said, in the case of State v. Persons, etc., in Chaves County, 29 N. M. 654, 226 P. 886, 889:

"Appellant argues that taxes levied on value in excess of actual value are illegal and void. As an abstract proposition this is unquestionably correct, since such an excessive valuation would be contrary to the terms of the statute authorizing the assessment. However, when we come to apply the abstract principle to the concrete case, we are met with the difficulty of ascertaining with precision the actual value of any given property. Omniscience has not put a price tag or other indication of value on any of our worldly goods. When value becomes an issue, imperfect human agencies must be devised and instituted for the decision thereof.

" 'Absolute equality and uniformity are seldom, if ever, attainable. The diversity of human judgments, and the uncertainty attending all human evidence, preclude the possibility of this attainment. Intelligent men differ as to the value of even the most common objects before them—of animals, houses, and lands in constant use. The most that can be expected from wise legislation is an approximation to this desirable end; and the requirement of equality and uniformity found in the Constitutions of some states is complied with, when designed and manifest departures from the rule are avoided.' Stanley v. Supervisors of Albany County, 121 U.S. 535, 7 S.Ct. 1234, 30 L.Ed. 1000.

"The imperfections of such agencies are amply illustrated by the case now before us, where no two were able to agree as to the actual value of appellant's property; but there must be a finality to disagreements, and somewhere must be lodged authority to determine the issue conclusively. When so determined, the actual cash value of the property is fixed and established in law, although as a matter of fact, and considered in the abstract, the value so fixed may be excessive or deficient. So, under the law as it existed prior to the 1921 statute, in the absence of all grounds of equitable jurisdiction, when the state tax commission fixed the actual cash value of appellant's property, the value so fixed, as a matter of law, was the actual value, regardless of the belief on the part of appellant and on the part of the court that such value was excessive."

When the assessor fixes the value upon property and the taxpayer fails to appeal first to the county board of equalization and then to the State Tax Commission, such value as placed on the property by the assessor becomes final, and the court cannot set up its own judgment of the value of the property in lieu thereof. Chapter 143 in no manner changed the rule or the law.

In the instant case, however, we are confronted with a more complicated proposition. We cannot say that the foundation of the suit in the trial court was based solely on excessive assessment. The trial court had jurisdiction of the parties and the general subject-matter. Within the taxpayer's petition and the judgment of the court we find the allegation that the

assessment or charge was also "erroneous and illegal." Thus the trial court had jurisdiction of the particular subject-matter. The payment under protest (as to the 1934 taxes) was made June 11, 1935, and the proceeding was instituted within sixty days thereafter as provided by law.

That Laws 1933, c. 143, does not contemplate the relief of reduction of assessment on the mere determination that it is excessive we have sufficiently demonstrated. Its purpose is not to enable a judge to substitute his opinion of property values for the opinion of the assessing authorities, and that the statutory criterion "erroneously or illegally charged," correctly interpreted means only such assessments or excesses in assessments as are "illegal and void."

The record before this court may justify the claim that the district judge has reduced an assessment merely because he considered the property to have been overvalued by the tax authorities.

■ However, every presumption of regularity and of due performance of official duty attends to sustain, if possible, the judgment of the trial court. The sworn allegation is that the 1934 assessment was "erroneously and illegally assessed and charged." That is the exact language of the statute, eliminating the word "assessed."

■ The district attorney, the taxpayers' "adversary" (Los Alamos Ranch School v. State, supra), filed his consent that the court "hear and determine the matters set out in said petition and enter such judgment as the facts may require at any time without further notice." The court "heard the evidence" and was "sufficiently advised in the premises." It determined that the assessment was "erroneous, excessive, inequitable, unjust and illegal." The district attorney and the judge knew the language of the statute and understood its meaning. The judge presumably was given evidence to support the judgment he rendered vacating the assessment.

We must hold the judgment sufficient as being based upon evidence heard. That is the rule. Canavan v. Canavan, 17 N. M. 503, 131 P. 493, Ann.Cas.1915B, 1064.

■ However, the conclusion we reach as to the regularity of the judgment only goes to the extent that the court adjudged the assessment to be erroneous and illegal. The judgment roll shows that there were other charges made to the effect that the assessment was excessive. The trial court was not content with holding that the assessment was erroneous and illegal and ordering such erroneous and illegal assessment stricken from the tax roll and directing a refund to the taxpayer of the money paid under protest. The judgment of the trial judge ordered a reassessment. This order of reassessment was without the issues and beyond the court's jurisdiction. Under no circumstances in a proceeding initiated pursuant to chapter 143 could the court reassess the property upon petition of the taxpayer. To this extent the pretended judgment is void. In this the trial judge exceeded his

jurisdiction. The trial court did not commit mere error or irregularity when by its judgment it proceeded to a revaluation of the property for the year of 1934, but exceeded its jurisdiction.

■■■■ When the court found that the taxes for the year of 1934 had been erroneously and illegally charged, it could have ordered the assessment vacated and set aside and the money paid under protest refunded to the taxpayer. That is all that the court could do. If the cancellation of such assessment left the tax records without any assessment of the property, and one ought to be made, then it became the duty of the taxing authorities in .the manner provided by law to place the property upon the tax rolls at a value to be determined by the taxing authorities and not the court.

The order of the court in revaluing the property as to the 1934 taxes being void, it necessarily follows that the order of the court respecting the 1935 taxes in the instant case likewise falls. This requires no additional comment.

■■■■ Our conclusion that the trial court exceeded its jurisdiction when it reassessed the property disposes of petitioners' contention that there is nothing before us for review on certiorari. They admit jurisdictional errors may be reviewed on certiorari as we many times

have held. South Spring Ranch & Cattle Co. v. State Board of Equalization, 18 N. M. 531, 139 P. 159; State ex rel. Board of Commissioners of State Bar v. Kiker, Judge, 33 N.M. 6, 261 P. 816; Gallup American Coal Co. v. Gallup Southwestern Coal Co., 39 N.M. 344, 47 P.(2d) 414. This being a special proceeding with no right of appeal provided (Los Alamos Ranch School v. State, 35 N.M. 122, 290 P. 1019), the judgment therein is reviewable, if at all, only upon certiorari, as we have just held it to be.

We have stated that no appeal exists from judgments in this special proceeding. That is true in so far as the present case is affected. However, mention should be made of the fact that by Laws 1937, c. 197, the Legislature has declared that an appeal shall be allowed from. final judgments in all special statutory proceedings, under such rules of procedure as the Supreme Court may adopt.

For the reasons given, the judgment of the lower court is reversed, and the cause is remanded to the district court of Santa Fé county, with directions to set aside so much of the judgment in said cause as revalues and reassesses the property in question and for further proceedings in conformity to the views herein expressed.

HUDSPETH, C. J., and SADLER, BICKLEY, and BRICE, JJ., concur.