[No. 2521.   Feb. 25, 1921.]

## FIRST STATE BANK OF BERNALILLO v. STATE.

### SYLLABUS BY THE COURT.

1.   Where taxes are assessed against a corporation owning real and personal property for the year 1919, the fact that it winds up its affairs and ceases to do business on March 10, 1919, does not entitle the district court, under Code 1915, § 5475, to abate that portion of its taxes on its personal property from March 10th to the end of the year, and to fix and determine the amount of taxes due on its real estate for the year in question.                                   P. 81

2.   The phrases in the statute "any errors of other kinds by which any injustice may be done any taxpayer," and "any taxpayer complaining of such injustice may submit his complaint," etc., refer only to errors appearing in the assessment book by which injustice is done the taxpayer.   Bond-Dillon

First State Bank v. State, 27 N. M. 78.

Co. v. Matson, Treasurer, 27 N. M. 85, 196 Pac. 323, followed.                                    P. 82

Appeal from District Court, Sandoval County; Hickey, Judge.

Proceedings by the First State Bank of Bernalillo for abatement of taxes. Judgment for plaintiff, and the State appeals. Reversed and remanded, with instructions to dismiss.

John Venable, of Albuquerque, and O. O. Askren, Attorney General, for the State.

### OPINION OF THE COURT.

RAYNOLDS, J.   This is an appeal by the State Tax Commission from a judgment of the district court of Sandoval county abating the taxes of the appellee, the First State Bank of Bernalillo, for the year 1919. The appellee by its counsel on April 5, 1920, filed its petition addressed to the district attorney and presented it to the court on May 5, 1920. No evidence was taken by the court, nor offered by the appellee.   After an order had been entered granting the relief prayed for, to which order appellant objected and excepted, an appeal was taken to this court.

Petition of the appellee bank alleged, in substance, that an injustice had been done it in the assessment against it for the year 1919; that it had returned its capital stock for assessment and taxation for that year at $25,000 and "the banking house and premises, in which the business of the said bank was conducted, and in which a part of the capital stock of said bank was invested"; that it had liquidated its affairs and ceased to operate on March 10, 1919; that the value of said building and premises, in which part of the capital stock is invested, is $5,000. The petition further states that the corporation should pay taxes on its capital stock from January 1, 1919, to March 10, 1919, and that from the 10th of March, 1919, the date of liquidation, it should pay

taxes upon the value of said building and premises, i. e., $5,000; that at the rate of taxation on this basis of value and proportionment petitioner is only liable for taxes in the amount of $187.21, instead of $443.75, the amount appearing on the tax roll as due for taxes. Petitioner requests that the matter be submitted to the court, and an order be asked for from the court changing and correcting said assessment to show that the total tax due from petitioner is $187.21, instead of $443.75.

On May 4, 1920, an order was entered granting this relief and further ordering the collector to accept and receive $187.21 in full payment of all taxes of petitioner for 1919, and to execute a receipt in full for the taxes for said year against said petitioner, the First State Bank of Bernalillo.

The appellant, the State Tax Commission, assigns four errors, all of which may be considered under one general assignment that the court below was without jurisdiction of the parties and the subject-matter of the action. The appellee bank, the petitioner below, evidently sought relief from its taxes for 1919 under the provisions of Code 1915, § 5475, which is as follows:

"The assessment book when delivered to the county treasurer, properly verified by the affidavit of the county assessor, and properly certified by the county commissioners, as required by law, shall constitute his authority to collect the taxes therein set forth, and he shall not be held liable for any irregularity or illegality in any of the proceedings prior to his receiving said assessment book; and the amounts to be paid as taxes as shown by said assessment book, shall not be altered, reduced or in any manner changed, except by direction of the district or Supreme Court; but this prohibition shall not extend to the correction of obvious clerical errors in names, description of property or computation of amount of taxes. If the treasurer shall discover any errors of other kinds in said assessment book by which any injustice would be done to any taxpayer, it shall be his duty to report the same to the district attorney, and any taxpayer complaining of any such injustice may submit his complaint to the district attorney; and if the district attorney is satisfied that correction or change should be made so as to avoid

injustice to the taxpayer, it shall be his duty to submit the matter to the district court and ask for an order of that court that such change or correction should be made, without cost to the taxpayer injuriously affected."

This section has been considered by the court in other cases, but the precise point here raised has never been passed upon. We held in Bond-Dillon Co. v. Matson, Treasurer, 27 N. M. 85, 196 Pac. 323, decided at this term of court, that the district court was without jurisdiction to substitute its judgment for that of the duly constituted taxing authorities on the question of the value of the taxpayer's property, when that question, after notice and hearing, had been submitted to such authorities and the value fixed by them. Here, however, the power of the court under the statute to abate, cancel, and modify the assessment rolls when the taxpayer alleges an injustice has been done him is called in question and is for decision.

[1] It will be noticed that the words "any such injustice," as used in the statute, refer to errors of other kinds in the assessment book by which any injustice would be done any taxpayer. The taxpayer complaining of any such injustice is confined to errors of other kinds (other than obvious clerical ones referred to) in the assessment book by which any injustice would be or is done. In this case no error in the assessment book by which any injustice is done petitioner is alleged or proved. The property was properly assessed for the year 1919, and the subsequent action of the corporation in discontinuing business does not relieve it from its liability to pay taxes assessed against it. In fact, the policy of the law in this state, as shown by Laws 1917, c. 112, § 36, providing that no corporation shall be dissolved until all taxes levied upon or assessed against it shall be fully paid, indicates clearly that it does not countenance the abatement of taxes of a corporation upon its dissolution. On this proposition alone— that is, the fact that there is no error in the assess-

ment book by which any injustice is done the petitioner—the case should be reversed as the petitioner fails to come within the class of taxpayer sought to be protected from injustice done him by errors in the assessment book.

[2]  The question, however, of the construction of this section is one of importance, and its meaning should be settled at this time.  The evident purpose of the act from its language is: First, to allow the treasurer to correct obvious clerical errors, such as clerical errors in names, description of property, or computation of the amount of taxes; second, it is made the duty of the treasurer, if he shall discover any errors of other kinds in any assessment book by which any injustice would be done any taxpayer, to report the matter to the district attorney, so that the district attorney, if satisfied, shall submit the matter to the district court, and ask for an order making the change or correction which should be made; third, it allows any taxpayer complaining of any such injustice—that is, any injustice because of any errors of other kinds than obvious clerical ones in the assessment book—to submit his complaint to the district attorney, and, if the district attorney is satisfied that the corrections should be made, it is his duty to submit the matter to the district court and ask for an order that such change or correction should be made.

Any taxpayer complaining of any such injustice may submit his complaint to the district attorney. As stated in South Springs Ranch Co. v. State Board of Equalization, 18 N. M. 531 at page 570, 139 Pac. 159, the action of the district attorney is not final in refusing or failing to submit the matter in question to the district court.  His arbitrary refusal to do so amounts to legal fraud and brings the taxpayer within the class of those entitled to equitable relief. The evident purpose of the act was to prevent or prohibit the treasurer making any changes in the assessment book, except on the order of the district

First State Bank v. State, 27 N. M. 78.

or Supreme Court. He could correct or make changes for obvious clerical errors specified therein. If he discovered other errors in the book (errors other than obvious clerical ones mentioned) which would work injustice to the taxpayer, he is bound to report the matter to the district attorney and have the court correct it. The taxpayer who complained of any such injustice—i. e., an injustice that would work against him on account of the errors in the book—could also file his complaint in the district court. What was the remedy against injustice that the Legislature sought to give to the taxpayer, and from what injustice is he entitled to have relief?

The general principles applicable to taxation are thus stated by Cooley, on page 255, vol. 1, Taxation:

"It being thus manifest that there are serious and often insurmountable difficulties in the way of equal and perfectly just taxation, it remains to be seen what is the rule of law where in any particular case the inequality can be pointed out and demonstrated.

"Theoretically tax laws should be framed with a view of apportioning the burdens of government, so that each person enjoying government protection shall be required to contribute so much as his reasonable proportion and no more. The tax law which comes nearest to accomplishing this is in theory the most perfect.

"If by 'justice' equality in taxation is meant, the operations of the government must come to a stop from the absolute impossibility of fulfilling it. * * * No single tax can be apportioned so as to be exactly just, and any combination of tax is likely in individual cases to increase instead of diminishing the inequality.

"In the exercise of the power to tax, the purpose always is that a common burden shall be sustained by common contributions, regulated by some fixed general rule and apportioned by the law according to some uniform ratio of equality. So the power is not arbitrary, but fixed, and rests upon fixed principles of justice, which have for their object the protection of the taxpayer against exceptional and invidious exactions, and which are to have effect through established rules operating impartially. The apparent equality of any particular exaction cannot support it in accordance with law, nor, on the other hand, can seeming injustice of the levy actually authorized by law defeat it, provided it is made under such general rules as the wisdom

of the Legislature has determined are needful and proper for the general good. The impossibility that government should be administered even by the most conscientious rulers without injust ·consequences in particular cases is universally recognized, and the state is therefore considered to have performed its full duties when it has devised and established such general rules and regulations as seem calculated to reduce such consequences to the minimum."

Cooley on Taxation, vol. 1 (3d Ed.) pp. 4 and 5.

If the term "injustice" is used in its ordinary sense, the taxpayer could by presenting his petition to the court and satisfying the judge that an injustice had been done him set at naught the whole system of assessment and collection of taxes and place in the hands of the courts the final determination of all questions of fact, law, and policy regarding taxation. We do not believe that the Legislature by this section intended to thus turn over to the courts the power and authority to pass upon all these questions.

As stated in Bond-Dillon Co. v. Matson, supra, the taxpayer is entitled to relief in equity on a proper showing, but the injustice for which the statute is intended to afford a remedy is, by its terms, such injustice as is caused by any errors of other kinds (other than obvious clerical ones mentioned) discovered by the treasurer or taxpayer in said assessment book. In this case there was no such error, the assessment book showing a regular and proper assessment. The statute is intended to protect the treasurer and give him certain powers in regard to the assessment book after it comes into his hands. Errors appearing thereon which work injustice are to be corrected, but the power of the treasurer and of the courts does not, under this statute, extend to overturning, correcting, or modifying every action or step by the taxing authorities in the assessment and collection of taxes and substituting the judgment of the courts for that of the taxing authorities in all questions of fact, law, and policy in regard to taxation.

The case before us is clearly one where no such injustice was done to the petitioner through errors in the assessment book, and therefore not a case in which he was entitled to the relief prayed for and obtained.

For the reasons above stated, the case is reversed and remanded, with instructions to dismiss the petition; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.