(No. 22493.—

THE PEOPLE *ex rel.* Richard S. Wangelin, County Collector, Appellee, *vs.* GEORGE B. GILLESPIE, Appellant.

*Opinion filed October 24, 1934.*

WHITNEL & BROWNING, and GILLESPIE, BURKE & GIL-LESPIE, for appellant.

LOUIS P. ZERWECK, State's Attorney, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The appellee, as county collector of St. Clair county, applied to the county court of that county for judgment for delinquent real estate taxes for the year 1932 assessed against the property of the appellant. The appellant filed objections to the taxes assessed and in compliance with the statute paid seventy-five per cent thereof. The objections charged (1) that the board of assessors and board of review of St. Clair county are not legally constituted bodies; and (2) that the valuation placed upon the property of the appellant by the taxing bodies is so grossly in excess of its true or market value that the valuation is fraudulent, an unjust discrimination against the appellant and in violation of his constitutional rights under the State and Federal constitutions. The county court overruled the objections and entered judgment for the full amount of the

taxes in controversy. From that judgment this appeal is prosecuted.

To permit the question to be decided in this proceeding as to whether the board of review and the board of assessors are severally legally constituted bodies would be to authorize such issue to be raised and tried in a collateral proceeding. Such issue must be made by a direct proceeding and cannot be inquired into in the present cause.

At the outset of the case the appellee urges that the objection attacking the assessment of the appellant's property on the ground of fraud is not specific enough to raise that question. No motion was made in the trial court to strike the objection, nor was there any request made of the trial court that the objector be required to make his objection more specific. The case was tried on the issue of fraud made by such objection without protest on the part of the appellee. He cannot now be heard to complain of the insufficiency of the objection as a pleading in the cause.

The evidence shows that the appellant filed his complaint with the board of review, charging, in substance, that the valuation placed upon his property was not the true or market value but a highly excessive valuation, amounting to a fraudulent over-valuation. A hearing was had on such objection by the board of review, but it refused to reduce the valuation. No question is raised in the record that the appellant did not exhaust his remedy before the board of review.

The real estate consists of two tracts on the west side of Collinsville avenue, in East St. Louis, outside of the main business district of the city. One property has a frontage of 55 feet and is hereafter referred to as the 55-foot lot. The other property has a frontage of 25 feet and is hereafter referred to as the 25-foot lot. There is no substantial conflict in the evidence as to the condition of the improvements on the properties on April 1.

The evidence shows that the 55-foot lot was purchased by the appellant in 1915 or 1916 for $33,000, and at that time had the same building upon it as it had on April 1, 1932. The 55-foot lot was improved by a three-story building. This building is a composite structure. The original building at the rear of the lot was a church building constructed in 1878 and at that time built of second-hand brick. The front part of the building next to the street was constructed in 1892. In 1896 the building was badly damaged by a cyclone. After the cyclone the building was repaired in 1896 and a third story built as a lodge hall. There are three elevations on the first floor of the building. The second floor was divided into living rooms and the third floor has been used as a music hall and lodge room. The entire building had been unoccupied for a period of three years immediately prior to April 1, 1932, except on a few occasions it had been used as a display room for temporary purposes at a rental of one dollar per day. After the former tenants of the lower floor vacated the property the building was burglarized and all the piping and plumbing above the first floor was stripped from the building and has never been replaced. No new furnace has been put in the building since that time. The roof needs extensive repairs. No general repairs have been made on the building for eight or ten years prior to April 1, 1932, and on that date it was in extremely bad repair. The evidence shows that to put the ground floor of the building in a state of repair for use as a store room would cost approximately $5000, with no assurance that a tenant could then be procured. The property has been listed with realtors for sale, but no offers of purchase have been made prior to April 1, 1932. There is evidence that in order to make a first-class business building of this property it would be cheaper to tear it down and reconstruct it rather than to repair it.

The building on the 25-foot lot is of brick, two stories in height, the lower story being a store room and the upper story being originally fitted for living rooms. The building has a flat roof, with interior wood construction. While the record does not show the exact length of time that this building has been vacant, yet the record discloses that it had been unoccupied for a considerable time prior to April 1 and was unoccupied on April 1, 1932. It was in a bad state of repair. The highest rental for this building was $75 per month, and that was during the period referred to in the record as the "boom period." The evidence shows that if the building could be rented at all, no rental approximating $75 per month could be obtained for it in its present condition. Since about 1927 there has been a declining market for properties of the type and character involved here.

Excluding the testimony of the appellant, there were several competent and qualified witnesses who testified upon the subject of valuations. The maximum valuation of the 55-foot lot, including the buildings and improvements thereon, as shown by the testimony, was $35,000, with a minimum valuation of $17,000. The same witnesses testified as to the full, fair cash market value of the 25-foot lot as of April 1. The maximum valuation placed on this property on that basis was $15,000 and the minimum valuation was $9500. The evidence shows that other property in the immediate neighborhood was valued at much less than the appellant's property on a front-foot basis.

The undisputed evidence shows that real property in the city of East St. Louis was assessed as of April 1, 1932, not upon its fair cash market value but it was debased by the taxing authorities to forty per cent of its fair cash market value and the tax assessment spread upon that basis. On that basis the property on the 55-foot lot was assessed at $28,200, which is an actual valuation of $70,500. On the 25-foot lot the actual value was $20,000. For taxa-

tion purposes it was debased sixty per cent and assessed upon a valuation of forty per cent of its actual fair cash market value, or $8000.

The year 1931 was the quadrennial year. The values of these properties for taxation purposes were fixed as of April 1, 1931, at the same amounts as they were assessed as of April 1, 1932, and upon the same forty per cent basis. The appellant filed objections in the county court to the taxes assessed against his property for the year 1931, alleging, in substance, that the property was assessed at so excessive a value as to constitute fraud. A hearing was had on the 1931 objections before the county court and the assessed valuation was reduced by that court to $19,700 on the 55-foot lot and on the 25-foot lot to $7500. In 1932 the board of assessors re-assessed the property at the original assessed value placed upon the same in 1931 by the assessing board, notwithstanding the reduction in assessed value ordered by the county court. On the present hearing but one witness testified for the appellee. He was a member of the board of review. He stated that the board went to see the property but did not go in the buildings as they were locked, but both buildings were vacant, and the decisions of the board were made upon what the board could see. On cross-examination he stated that the property was badly in need of repairs; that he did not know the amount of time it had not been rented; that it was worth more in 1929 than it was in 1931; that there were a number of vacancies on Collinsville avenue in the neighborhood of this property; that the board did not consider what the property could have been rented for in 1932; that he did not think it would be fair, in fixing the assessment, for the board to consider what the property could be sold for on April 1, 1932; that the factor of what the property would sell for was not taken into consideration at all, but that for taxation purposes the board considered the property of the same value on April 1, 1932, as it was

in 1928 and 1929. This member of the board had never been in the real estate business. One of the members of the board had been in the printing business and the third had been a real estate broker in St. Louis, Missouri. The evidence shows that there was practically no market for real estate property on Collinsville avenue in the immediate neighborhood of the property in question.

The statute requires that property must be assessed at its fair cash value—not the price that the property would bring at a forced sale but at a voluntary sale, where the owner is ready, able and willing to sell but not compelled to, and the buyer is ready, able and willing to buy but not forced to, as of April 1 in the year in which the assessment is made. (*People* v. *Stewart*, 315 Ill. 25.) Early in the history of this State this court stated that one of the methods of considering what was the value of property for taxation purposes was to consider what a prudent man would give for the property as a permanent investment, with a view to present and future income. (*State* v. *Illinois Central Railroad Co.* 27 Ill. 64.) While the assessed value for taxation purposes cannot be impeached merely because the assessing body and the court may differ as to the value of the property, yet where the evidence clearly establishes that a gross over-valuation of the property has been made by the taxing body under circumstances showing that the actual value of the property was not considered and that those recognized standards by which the value of property is determined were not considered or applied in fixing the valuation of the property, the valuation so fixed by the taxing body is subject to review by this court. (*People* v. *Stewart, supra; People* v. *Wiggins Ferry Co.* 357 Ill. 173.) Also, where the circumstances show that the property is grossly over-valued, and such excess value is reached under circumstances showing either lack of knowledge of values on the part of the taxing body or the value is deliberately and knowingly fixed contrary

to the known value, fraud will be inferred and the court will protect the rights of the tax-payer. (*People* v. *Wiggins Ferry Co. supra; People* v. *St. Louis Bridge Co.* 290 Ill. 307; *Raymond* v. *Chicago Union Traction Co.* 207 U. S. 20, 52 L. ed. 78.) The evidence clearly establishes in the case at bar that the property of the appellant was grossly over-valued for taxation purposes.

We now approach the question as to whether, as shown by the record, the appellant shall pay a tax upon the full cash market value as of April 1, 1932, or whether he shall pay a tax based upon forty per cent of such full, fair cash market value. This court has always condemned, and still condemns, the violations of the statute governing the listing of property for taxation purposes where the property is not listed upon the basis of valuation commanded by the statute. Notwithstanding the statutory command, the evil of debasing property for taxation purposes below its fair cash market value still persists. Section 1 of article 9 of our constitution provides, in substance, that the General Assembly shall provide such revenue as shall be needful by levying a tax by valuation. There can be no question about the meaning of this constitutional provision. It requires an equality of taxation in proportion to the value of the property taxed. It prohibits the taxation of one kind of property within the taxing district at one value while the same kind of property in the same district for taxation purposes is valued at either a grossly less value or a grossly higher value. Uniformity of taxation must be preserved in order to carry out the command of the constitution. Where it is apparent that taxing bodies have willfully rejected the provisions of the statute by generally assessing property for taxation purposes at a figure substantially less than its true or market value, all property within such taxing district must be assessed upon the same plane in order to secure the uniformity of taxation guaranteed by the constitution. (*People* v. *Wiggins Ferry Co.*

*supra; People* v. *St. Louis Bridge Co. supra; Bistor* v. *McDonough,* 348 Ill. 624; *People* v. *Keokuk and Hamilton Bridge Co.* 287 id. 246; *People* v. *Orvis,* 301 id. 350; *Greene* v. *Louisville and Interurban Railway Co.* 244 U. S. 499, 21 L. ed. 1280.) In fixing the just amount of tax to be paid by the appellant the valuation of his property for taxation purposes must be fixed at forty per cent of the fair cash market value thereof as of April 1, 1932. Under the facts as shown by this record no other method of valuation would secure to the appellant the uniformity of taxation demanded by the constitution.

The judgment of the county court is reversed and the cause is remanded to that court, with directions to sustain the second objection of the appellant as to the amount of tax extended against the 55-foot lot on an assessed valuation in excess of $14,000, and likewise to sustain such objection as to the amount of tax assessed against the 25-foot lot on an assessed valuation in excess of $5000.

*Reversed and remanded, with directions.*