121 P.2d 152

**In re TRIGG.**

No. 4599.

Supreme Court of New Mexico.

Jan. 2, 1942.

Luis E. Armijo, of Las Vegas, for appellant.

John W. Chapman, Sp. Tax Atty., and C. C. McCulloh, Asst. Sp. Tax Atty., both of Santa Fe, for appellee.

BICKLEY, Justice.

This appeal presents the question whether the courts have jurisdiction to grant relief to a taxpayer because his grazing land has been improperly classified and consequently assessed at a valuation so excessive as to be constructively fraudulent.

This question must be answered in the affirmative. See In re Blatt, 41 N.M. 269, 67 P.2d 293, 110 A.L.R. 656; Scholle v. State Tax Comm., 42 N.M. 371, 78 P.2d 1116.

These decisions introduce no new principles. In First National Bank of Raton v. McBride, 20 N.M. 381, 149 P. 353, 357, it was said: "There inheres in the nature of the subject of taxation a necessity oftentimes which would seem to authorize, if not require, equitable interference."

It is true there are decisions of our Court to the effect that mere excessive valuation does not constitute the "injustice" referred to in a certain statute which authorizes a taxpayer to petition the district attorney to apply to the court for relief in his behalf. We there held that the court had jurisdiction to grant relief *under the statute,* only where the injustice was of the kind the statute contemplated. See Bond-Dillon Co. v. Matson, 27 N.M. 85, 196 P. 323; First State Bank v. State, 27 N.M. 78, 196 P. 743.

Those decisions are not in conflict with and their force is not impaired by the later decisions in the Blatt and Scholle cases cited supra.

As we have seen in the Blatt and the Scholle cases, the power of a court of equity here invoked is not limited to the relief provided by statute.

As said in the Blatt case [41 N.M. 269, 67 P.2d 303, 110 A.L.R. 656]: "A court of equity may review upon facts specifically set forth showing the assessment to be *so excessive* as to be constructively fraudulent". (Emphasis supplied.) See, also, 61 C.J. "Taxation" § 1128.

The next question presented, not more difficult, but requiring more extended discussion is, has the plaintiff set forth facts specifically which bring him within the principle last quoted.

Chapter 127, Laws 1927 provides: "At the session herein provided to be held on the third Monday of November annually the State Tax Commission shall determine and fix the *actual* valuations of the different classes of livestock and of the different classes of grazing lands for the ensuing year." Section 3. (Emphasis supplied.)

It is the prevailing understanding in the office of the State Tax Commission (hereinafter referred to as the Commission) and elsewhere that under this statute the valuations of grazing land are not subject to alteration by the county assessors or other county taxing officials.

It is alleged in the complaint that the Commission, pursuant to law, determined for the year 1938, the assessable valuations of grazing lands of the state, using a formula based on a section of 640 acres and its approximate carrying capacity in number of head of cows per section so that all grazing lands of the state are thus classified and valued:

| Class | Carrying Capacity | Valuation |
|---|---|---|
| C | 20 head | $2.00 per acre |
| D | 17 head | 1.75 per acre |
| E | 15 head | 1.50 per acre |
| F | 12 head | 1.25 per acre |
| G | 10 head | 1.00 per acre |
| H | 7 head | .75 per acre |

It is further alleged that the assessment against the real estate of the plaintiff as it appears upon the tax rolls of San Miguel County for the year 1938 is as follows:

| | No. Acres | Val. per acre | Valuation | Total Val. |
|---|---|---|---|---|
| Grazing Land—Class "C" | 12,400 | $2.00 | $24,800 | |
| " " "D" | 3,000 | 1.75 | 5,250 | |
| " " "E" | 13,000 | 1.50 | 19,500 | |
| " " "F" | 9,000 | 1.25 | 11,250 | |
| " " "G" | 22,294 | 1.00 | 23,294 | |
| Total Acres | 59,694 | | | $83,094 |

Plaintiff protested against the assessment so fixed by the county assessor and appealed to County Board of Equalization, which sustained the action of the county assessor as to the classification and value of said lands.

Plaintiff appealed from such action of the County Board of Equalization to the Commission, with the result that it was ordered that the assessment, classification and valuation should remain undisturbed.

It is further alleged that the real estate aforesaid is situated in School District No. 43 and that the same consist of grazing lands and "are adaptable only for grazing purposes," and, that the classification of said lands by the taxing officials

"Was and is discriminatory and not uniform and is not in just relationship to the value of the real estate of the tax-payers in School District No. 43 * * * and is excessive."

Not long ago, (1938) in Scholle v. State Tax Commission, 42 N.M. 371, 78 P.2d 1116, 1118, we said:

"In South Spring Ranch & Cattle Co. v. [State] Board of Equalization, 18 N.M. 531, at page 572, 139 P. 159, 174, we said:

'So long as the taxpayer is not assessed more than the law provides, and in the absence of some well-defined and established scheme of discrimination, or some fraudulent action, he has no cause of complaint, and the courts have no power to review the action of the various taxing agencies established by law.'

"We have no desire to depart from the rule so long established in this state that the court will not afford relief to a taxpayer whose property is not assessed more than the law provides."

In Abreu v. State Tax Commission, 29 N.M. 554, 224 P. 479, we distinctly recognized discrimination as a ground for equitable relief to the taxpayer.

In First State Bank v. State, 27 N.M. 78, 196 P. 743, 744, we quoted with approval certain general principles of taxation stated by Cooley in his work on Taxation, among which are the following: "In the exercise of the power to tax, the purpose always is that a common burden shall be sustained by comon contributions, regulated by some fixed general rule and apportioned by the law according to some uniform ratio of equality. So the power is not arbitrary, but fixed, and rests upon fixed principles of justice, which have for their object the protection of the taxpayer against exceptional and invidious exactions, and which are to have effect through established rules operating impartially."

In Bond-Dillon Co. v. Matson, 27 N.M. 85, 196 P. 323, 325, the court denying relief to the taxpayer, distinguished and explained other decisions reaching a contrary result and pointed out that in one case [Ute Creek Ranch Co. v. McBride, 20 N. M. 377, 150 P. 52] discrimination against the taxpayer had been "admitted by the pleadings", and in another case [State v. Superior Lumber & Mill Co., 23 N.M. 606, 170 P. 58], "overvaluation of the taxpayer's property is admitted by the pleadings".

So it is in the case at bar, that it is important to keep in mind that the taxing officials are not here asserting that they have exercised an honest judgment which they are ready to back up with proof. They admit that the taxpayer is discriminated against in that his property is not valued in just relationship to the value of the real estate of the taxpayers in the taxing district in which the land of plaintiff is situated; they admit that they have placed the taxpayer's property in classes unknown to the law, which will result in the ultimate valuation of his property at double what "the law provides" and yet they assert that a court of equity has no jurisdiction to consider the case.

It is well to remember that there is a difference between a mere mistake in judgment of the assessing officers as to value and the intentional adoption by such officers of a *manifestly erroneous method* of arriving at value.

The complaint further alleges: "11. That the said assessments and classifications so made by the Assessor of the County of San Miguel, State of New Mexico, and by the Board of County Commissioners of the County of San Miguel, sitting as a County Board of Equalization, are erroneous, in that petitioner herein has no land which should have been classified as 'Class C', and no land which should have been classified as 'Class D', has no land which should have been classified as 'Class E', has no land which should have been classified as 'Class F', and has not to exceed five thousand acres which should be classified as 'Class G', and that the balance of 54694 acres should have been classified as 'Class H'."

It had been urged that this portion of the complaint is defective because it does not state *why* the classification of plaintiff's grazing land is erroneous. It has

been suggested that the plaintiff would have had a better complaint if he had alleged that he: "has no land which should have been classified as Class 'C', *because he has no grazing land with a carrying capacity of 20 head per section.*"

Viewing the complaint within its four corners, it is manifest that the pleader could mean nothing else. He set out in his complaint that the legal classification of Class "C" grazing land is land that will carry 20 head of cows per section. He then says that he has no land that should be classified as Class "C" grazing land. The necessary implication is that he has no land that will carry 20 head per section. The only way he could support this allegation would be with proof that he has no grazing land with a carrying capacity of 20 head of cows per section.

Likewise, with respect to the plaintiff's charge that the classification of plaintiff's lands was and is discriminatory and not uniform and is not in just relationship to the value of lands of other taxpayers in his taxing district. We start out with the presumption that as to taxpayers generally, the taxing officials have acted in accordance with law. Presumably then, grazing lands of other taxpayers in the vicinity of the lands of the plaintiff have been classified according to law. Plaintiff's charge amounts to this, that in the case of other grazing lands in his taxing district, class "H" lands have not been classified as Class "C", "D", "E", "F" and

"G" grazing lands as has the lands of the plaintiff.

Plaintiff prayed that his land be reclassified in accordance with the facts alleged.

The appellee demurred to the complaint for the reason that it fails to state facts sufficient to constitute a cause of action and as grounds therefor, states:

"1. That said amended complaint seeks relief because of over-valuation only, and not because of an error or injustice in the assessment complained of, such as is contemplated by the statute.

"2. That this Court does not have jurisdiction of the subject matter herein for the reason that the valuation for taxation purposes of said property involved herein for the year 1938, is final and cannot now be changed by this Court."

It will be noted that these stated grounds assume that the plaintiff seeks relief by virtue of the statute. This, as we have herein said, is a too narrow view.

We view the complaint in a light most favorable to the plaintiff and the demurrer as a general one, and consider whether the complaint states a cause of action warranting any equitable relief.

We state at once that plaintiff prayed for the wrong relief. The Court cannot reclassify or revalue and reassess those grazing lands. If the plaintiff is entitled to relief at all, it is to have a cancellation of the assessment on the ground that it is constructively fraudulent, leaving

to the taxing officials the duty of making a new assessment which is correct, equitable and just. We have said many times that the courts will not make assessments.

■ It is a familiar principle that a demurrer admits the truth of all facts well pleaded.

■ It is suggested that the allegations of the complaint which we have recited are nothing more than conclusions of the pleader and hence are not to be taken as admitted by the demurrer. This contention is without merit.

In the first place, as said in Standard Encyclopedia of Procedure, Vol. 5, page 208, in discussing Conclusion of Law: "It is difficult sometimes to distinguish conclusions of law from ultimate facts, and no rule has been formulated whereby the distinction is made."

It may be conceded that the statements in the complaint that the assessment is "erroneous" and that it is "excessive" may partake of conclusion, yet supplemented by other facts pleaded, and viewing the complaint as a whole, with all reasonable intendments of the allegations employed, we think the ultimate facts alleged are that the plaintiff has no land except grazing land, that none of this land has a carrying capacity of 20 head of cows per section and therefore none that should be classified in Class "C", and so on down through the various eliminations of plaintiff's lands from the erroneous inclusions by the taxing officials.

■ Furthermore in Michelet v. Cole, 20 N.M. 357, 149 P. 310, 312, it was decided: "An objection to a complaint, or a cross-complaint, that it does not state facts sufficient to constitute a cause of action is good only when there is a total failure to allege some matter which is essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, *or statements of conclusions of law or fact.*" (Emphasis supplied.)

That case was followed in Maddison v. Bryan et al., 31 N.M. 404, 247 P. 275, 284, and cited to the proposition: "We do not think that, in testing the sufficiency of this complaint, we should reject the conclusion of law."

Michelet v. Cole was followed again in State ex rel. Burg v. City of Albuquerque, 31 N.M. 576, 249 P. 242, 247, and cited to the proposition: "It [complaint] is not to be held insufficient because of incompleteness or indefiniteness of its allegations or because it states conclusions."

Michelet v. Cole was again cited by us in Parker v. Beasley, 40 N.M. 68, at page 79, 54 P.2d 687, 694, to the following statement: "We hold that the appellees sufficiently pleaded their counter-claim as against a general demurrer. They do not plead the manner in which such title was obtained, and the allegation might be subject to the criticism that it is a conclusion of law, but as against a general demurrer it is sufficient."

See, also, In re Morrow's Will, 41 N.M. 723, 73 P.2d 1360, where after extended re-

view, the rule in Michelet v. Cole was approved.

The allegations in the case at bar that the plaintiff's land should be placed in such and such a class cannot be called a conclusion of law. Facts alone are involved. The land is to be classified according to the number of head of cows per section it will support, which in itself is a fact question solely.

It is doubtless true that the real complaint of plaintiff is that his grazing land has been erroneously and excessively overvalued. Nevertheless, the complaint shows that classification is an intermediate step in the process of valuation, so that, after all, the vice inheres in wrong classification.

We have seen that since classification and valuation have been fixed by the Commission, the sole duty of the County Assessor is to determine the fact of the carrying capacity of the taxpayers' grazing lands and allocate to each class the number of acres properly falling in each class.

 The ultimate facts alleged in the complaint are that plaintiff has no lands that have a carrying capacity of 20, 17, 15 or 12 head of cows per section, and that he has not to exceed five thousand acres which have a carrying capacity of 10 head of cows per acre.

These facts are admitted by the demurrer.

Even if considered as conclusions of the pleader, they would withstand a general demurrer.

See Michelet v. Cole, 20 N.M. 357, 149 P. 310; Maddison v. Bryan et al., 31 N.M. 404, 247 P. 275; State ex rel. Burg v. City of Albuquerque, 31 N.M. 576, 249 P. 242; Parker v. Beasley, 40 N.M. 68, 54 P.2d 687; In re Morrow's Will, 41 N.M. 723, 73 P.2d 1360.

 It is next contended that the complaint is fatally defective because it is not therein alleged that the valuations as fixed exceed the actual value of the lands. This contention is without merit. The complaint says that plaintiff's lands are adaptable only for grazing purposes. That is as much as to say that it has no value as agricultural, mineral, or timber lands, etc. It would be demanding too much to require the plaintiff to challenge the Commission's valuations and classification of grazing lands of the state.

All that is required of the taxpayer is that he pay upon the valuation which the law provides. Scholle v. State Tax Comm., supra. The law has determined the actual value of grazing land for the purpose of assessment and taxation.

 The Commission in response to the mandate of the statute has fixed the actual valuations of the different classes of grazing lands. It must be assumed for the purpose of our consideration and decision, that the Commission has performed its duty. There is no contention in the briefs of the appellee Commission that a new and different classification has been created for plaintiff's grazing lands. If his lands fall within the classifications set up by the Com-

mission, they are of the actual value ascribed to such classes of grazing lands, and in view of the allegations aided by intendment, they have no value for any other purpose.

■ It is next suggested that the plaintiff has not stated a good complaint because it contained no allegations that the prejudicial effect upon plaintiff was due to corrupt, malicious, dishonest, fraudulent or illegal motives of the officers intrusted with the assessment of his property.

Here again the appellee is mistaken.

■ In the article on Fraud in 27 C.J., § 147, it is said: "Characterization of acts as fraudulent which are not fraudulent per se is not sufficient. It must be made to appear by the facts alleged, independent of mere conclusions, that if the allegations are true a fraud has been committed."

In the notes to this text it is said: "The use of the word 'fraud' in a complaint charging fraud does not enlarge the meaning of the facts pleaded."

Again: "The mere use of the words 'falsely' and 'fraudulently' accomplishes nothing unless they fit the facts to which they are applied."

24 Am.Jur., Fraud and Deceit, § 244, puts it this way: "Fraud may be well pleaded even though the conduct referred to is not alleged expressly to be 'fraudulent', provided the facts alleged are such as constitute fraud in themselves, or are facts from which fraud will be necessarily implied. The acts charged are not less fraudulent because the word 'fraud' or 'fraudulent' is not employed by the pleader in characterizing them. In other words, an allegation of facts from which the conclusion of fraud necessarily results is sufficient. Neither law nor equity requires that the specific details of the transaction in which fraud is predicated, or facts which are merely evidentiary, be pleaded."

■ Furthermore, as we said in the Blatt case, supra, it is sufficient to entitle the taxpayer to relief if he sets forth facts which show that the assessment is so excessive as to be *constructively fraudulent.*

■ Undoubtedly actual fraud usually, if not always, indicates some wrong action by the assessor, which springs from improper motive.

Such is not the case, however, in cases of constructive fraud.

In Scudder v. Hart, recently decided, 45 N.M. 76, 110 P.2d 536, 539, we quoted 26 C.J., Fraud, § 4, as follows: "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud."

■ There remains but one further question to answer, viz., do the allegations of the complaint disclose that the valuations resulting from wrong classification show

them to be "so excessive as to be constructively fraudulent"?

According to the allegations of the complaint, plaintiff's grazing lands should have been classified and valued at the total value of $46,020.50, whereas the classification and valuation adopted by the taxing officials resulted in a total valuation of $83,094, nearly double the correct amount. We do not hesitate to conclude that this mistake is so gross as to shock conscience and that it amounts to a constructive fraud which if not corrected, carries with it all the injurious consequences which would attend if flowing from corrupt, malicious or illegal motives.

A few illustrations from the decisions of other courts will be helpful. In the case of L. W. Blinn Lumber Co. v. Los Angeles County, 216 Cal. 474, 14 P.2d 512, 84 A.L. R. 1304, the court decided: "Where it appears that assessor and board of equalization both adopted *manifestly erroneous methods* showing gross overvaluation of property, such acts amount to constructive fraud warranting court's interference."

The court said: "Nor will his assertion, even though it be admitted to be true, that he acted honestly and in good faith in making the assessment in question, suffice to compel the upholding of an assessment when the assessor making it, however honest and well-intentioned, has willfully adopted and deliberately pursued a plan of assessment which is violative of the fundamental principles which should be his guide in the performance of his official duty; and when such an assessment is sufficiently shown to be replete with discrimination and lacking in uniformity in the burdens it imposes upon the owners of assessable property, such assessment will be invalidated at the instance of those property owners who shall pursue the proper statutory method to recover the taxes thus improperly imposed."

In First Thought Gold Mines v. Stevens County, 91 Wash. 437, 157 P. 1080, the Washington Supreme Court decided: "The courts will grant relief from a grossly inequitable and palpably excessive overvaluation of real property for taxation as constructively fraudulent, even though the assessing officers may have proceeded in good faith, and this without regard to the action of the board of equalization."

In Whatcom County v. Fairhaven Land Co., 7 Wash. 101, 34 P. 563, the same court decided that whether double valuation amounted to constructive fraud or not, it was so palpably excessive that a court of equity would afford relief to the taxpayer.

Following are further illustrations found in Decennial Digests, Taxation, ⊛459:

"Where a corporation is assessed for taxation upon certain property, consisting of pipe lines or conduits at a given rate per mile, and the taxing authorities, by mistake, estimate the length of the line for taxation to be longer than it really is, the corporation will be relieved from the payment of taxes assessed on the excess length." East Jersey Water Co. v. Roat, N.J.Sup., 45 A.

910; Same v. Sherman, Id.; Same v. Van Houten, Id.

"An assessment for taxation will be set aside where the valuation of the property is several times its actual value, and higher proportionately than other property of like kind in the same jurisdiction." Henderson v. Pierce County, 37 Wash. 201, 79 P. 617.

"Where the undisputed evidence showed that the real estate in question was assessed at more than twice its market value, and that the property on the opposite corners of the street, which was of two or three times its value, was assessed much lower than the property in question, the assessment was properly vacated in an action brought for that purpose." Dickson v. Kittitas County, 42 Wash. 429, 84 P. 855.

"An owner of cut-over lands, assessed for taxation as timbered lands, is entitled to reduction of the assessment as for overvaluation known to be such, within Code 1906, § 4312." Board of Sup'rs of Wayne County v. Mobile & O. R. Co., 99 Miss. 845, 56 So. 173.

"Where wild land is taxed $19,000, based on a valuation of $50,000 when the tax should be based on a valuation of $15,000 and assessed at $6,000, the discrepancy amounts to a constructive fraud." Case v. San Juan County, 59 Wash. 222, 109 P. 809.

"Assessment of property on 50 per cent. basis at $17,580, fair cash value of property being $10,000, was so grossly excessive as to be constructively fraudulent." Grays Harbor Const. Co. v. Grays Harbor County, 99 Wash. 184, 168 P. 1138.

"Members of board of equalization may act honestly and in good faith, and yet, where their method of increasing assessed valuations shows serious discriminations, their action will be deemed equivalent to fraud." Rancho Santa Margarita v. San Diego County, 126 Cal.App. 186, 14 P.2d 588.

"While assessed value of property for taxation cannot be impeached merely because assessing body and court differ, valuation fixed by such body is reviewable by Supreme Court, where evidence clearly establishes gross overvaluation under circumstances showing that actual value was not considered *and that recognized standards for determining value were not applied.*" People ex rel. Wangelin v. Gillespie, 358 Ill. 40, 192 N.E. 664. (Emphasis supplied.)

"Where circumstances show gross overvaluation of property for taxation by assessing body either deliberately or because of ignorance, fraud will be inferred and taxpayer's rights protected by court." People ex rel. Wangelin v. Gillespie, 358 Ill. 40, 192 N.E. 664.

"Fraud in assessment of tax may be implied from existence of grossly excessive assessment." Lubbock Hotel Co. v. Lubbock Independent School Dist., Tex.Civ. App., 85 S.W.2d 776.

"Court may set aside valuation of property fixed by tax board only if board acts

arbitrarily *or applies wrong* principles in ascertaining true value." Simkins v. City of Corsicana, Tex.Civ.App., 86 S.W.2d 792.

"Where required procedure is not substantially followed and valuations are found to be unjust, relatively or abstractly, assessments will be held invalid." Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524.

The former opinion is withdrawn and this one is substituted therefor.

The judgment is reversed and the cause remanded with directions to overrule the demurrer, permit the defendant to answer or otherwise plead, and for such further action as may be appropriate.

It is so ordered.

BRICE, C. J., and ZINN, J., concur.

MABRY, Justice (dissenting).

Appellant alleges, in substance, that he is the owner of some sixty thousand acres of land in the county of San Miguel and that the county assessor erroneously and mistakenly classified the grazing lands thereof under classes "C", "D", "E", "F" and "G", which classifications, when applied, were to be assessed under the uniform assessment program of the state tax commission, at $2, $1.75, $1.50, $1.25 and $1 per acre, respectively; and that they had no lands which according to their value, should have been classified under any of the aforementioned classes except possibly five thousand acres properly to be classified as "G" lands and that the remainder of his lands should have been assessed as class "H" at a value of $.75 per acre.

The complaint does not charge the taxing authorities with fraud nor does it set up any injustices or inequitable conduct which would invoke the aid of a court of equity once we determine that the courts do not act as assessors of property as we have many times held. And the error or mistake here relied upon is not the kind which may be corrected through the proceedings set out in sections 141-306, 141-307, N.M. Comp.Laws 1929. Appellant relies upon the fact that his lands have been overvalued for the purposes of taxation for the year of 1938 because erroneously classified as of a higher grade of grazing lands than the facts warrant. The relief sought is clearly for overvaluation and there are absent from the complaint any allegations which would take it from out the rule heretofore announced by this court. In re Blatt, 41 N.M. 269, 284, 67 P.2d 293, 110 A.L.R. 656; Morris v. State, by State Tax Comm., 41 N.M. 385, 69 P.2d 924; Scholle v. State Tax Comm., 42 N.M. 371, 78 P.2d 1116, and others.

Appellant had notice of the value fixed by the assessor, took statutory appeal to the county board of equalization, and, from a decision there affirming the value so fixed, he took his further appeal to the State Tax Commission where the assessment was likewise affirmed. He exhausted his remedy, under the circumstances, to have reduced the assessed value of his property. It is not

enough that appellant show that his assessment as finally fixed is higher than other lands similarly situated. To be afforded relief the assessment must have been in an amount in excess of the actual value of the lands in question, or some other injustices of which the courts will take notice must be relied upon; and appellant does not so complain. See cases above cited.

We have said that assessments may not be reduced or cancelled by the court for mere overvaluation; and this is the ground appellant relies upon, though he mistakenly confuses the act of overvaluation with the act of erroneous classification, which is, after all, simply the fixing by the assessor of a value for the land, which, in the mind of the appellant, is too high.

Cases could arise where an assessment would be, because of the magnitude of the overvaluation, so inequitable as to amount to constructive fraud from which the courts would grant relief; but this is not such a case. It cannot be said that the amount of overvaluation here complained of (admitting it was properly pleaded), not having been sufficient to shock the conscience of the trial court, should, nevertheless, shock the conscience of this court. I do not believe the facts relied upon show an assessment so excessive as to be constructively fraudulent.

Moreover, it may also be said that the allegation that the assessments and classifications complained of are "erroneous", considered alone, is clearly a conclusion of the pleader. It is none the less so when joined to what follows, viz., "in that petitioner herein has no land which should have been classified as Class 'C'," etc., since the addenda are themselves mere conclusions and the averment of two conclusions does not allege a single fact. Whether the plaintiff actually has any land which should have been classified in classes "C" to "F", inclusive, or not to exceed five thousand acres which should have been placed in Class "G", is determinable by unalleged facts. Hence, these allegations are not to be taken as admitted by the demurrer. Abreu v. State Tax Commission, 29 N.M. 554, 224 P. 479; Town of Farmington v. Mumma, 35 N.M. 114, 291 P. 290, and cases cited.

I am not unmindful of the case of In re Morrow's Will, 41 N.M. 723, 73 P.2d 1360, wherein the seemingly inconsistent decisions of this court on the effect of pleading conclusions are clarified and reconciled. Nevertheless, within the test laid down in that case, as the true one, it is my view that the conclusions here pleaded are not to be taken as admitted by the demurrer.

The most that can be gleaned from the complaint, fairly appraised, is a charge of overvaluation through erroneous classification. Even this charge rests on conclusions pleaded which, as already stated, are not to be taken as admitted by the demurrer. Abreu v. State Tax Commission, and In re Morrow's Will, both supra. In any event, a mere mistake of judgment on the part of taxing officials is not to be relieved against in equity. First State Bank v. State, 27 N.M. 78, 196 P. 743; Bond-Dillon Co. v.

Matson, 27 N.M. 85, 196 P. 323; W. S. Land & Cattle Co. v. McBridge, 28 N.M. 437, 214 P. 576; State v. Persons, 29 N.M. 654, 226 P. 886; Morris v. State, 41 N.M. 385, 69 P.2d 924; In re Blatt, 41 N.M. 269, 67 P.2d 293, 110 A.L.R. 656; Scholle v. State Tax Commission, 42 N.M. 371, 78 P.2d 1116. Actual fraud is nowhere charged. Nor, as we have hereinbefore said, do we have the case of an assessment "so excessive as to be constructively fraudulent" within the quoted statement as employed in the Blatt case, since the only allegations relied upon to show excessive valuation are conclusions of the pleader, as we have just held.

I am not prepared to say that such discrepancy between value fixed and that which ought to have been fixed, even if properly pleaded, is so great as to require this court upon review to disturb the discretion in this respect exercised by the trial court. For the reasons stated, I dissent.

SADLER, J., concurs.