M.F.M. CORPORATION, Plaintiff-Appellant, *v.* PATRICK J. CULLERTON *et al.,* Defendants-Appellees.

(No. 58877; )

First District (3rd Division)—December 20, 1973.

*Rehearing denied February 14, 1974.*

A. Jerome Moos, of Chicago (Harry G. Fins, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Henry A. Hauser, Assistant State's Attorneys, of counsel), for appellees.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court upon the denial of the petition for rehearing:

Plaintiff filed suit in the chancery division of the circuit court of Cook County charging that in 1971 its real estate was subject to a constructively fraudulent assessment. The trial court subsequently allowed plaintiff's motion to amend its complaint to include the 1972 assessment. Upon trial, the court at the close of plaintiff's case granted defendants' motion for judgment. Plaintiff appeals.

The real estate in question is located at 2607-59 South LaSalle Street in the City of Chicago. It is improved with a three-story brick and concrete factory warehouse building. The building was used as a newspaper printing plant until 1962. In 1967 after a period of vacancy, the property, in a deteriorated and vandalized condition, was purchased by plaintiff's predecessor in title for $175,000.

On December 1, 1968, plaintiff purchased the property for $316,000, including the costs of the construction work then being done. The purchase was made in order to rent part of the building to plaintiff's manufacturing business, Economy Folding Box Company. Economy negotiated with the seller for leasehold improvements at a cost of $80,400, said sum being added to the purchase price. Plaintiff has made no improvements, changes or alterations to the property since the purchase.

Economy entered into a 15 year lease with plaintiff at a yearly rental of $37,200 during the first ten years and an increase of $1,200 a year during each of the following five years. Economy occupied only the first two floors and sublet the third floor at a monthly rental of $2,625.

The 1967 assessed valuation of the quadrennium 1967 to 1970 was $118,575. In 1969, the Assessor raised the assessed valuation of the property to $430,433 and carried the valuation forward into 1970. Plaintiff filed suit and by order entered November 1, 1971, the 1969 taxes were reduced to $11,900 and the 1970 taxes were reduced to $12,996.06, based upon an assessed value of $118,575. In 1971, before the outcome of the aforementioned litigation, the property assessment was carried forward at $414,561 for the quadrennium of 1971 to 1974. When the Board of Appeals affirmed the Assessor's evaluation, plaintiff filed the present complaint.

Plaintiff in its complaint charged that defendants knew that the market price of the property was $316,000. Plaintiff further alleged that defendants had ignored the actual cash value of the property, the uniform percentage application of such value, and the statutory limitations of assessment in certifying the valuation of $414,561.

At trial plaintiff introduced the Assessor's cards for the property for the years 1969 and 1971. The 1969 card was as follows:

"Land $ 54,029
Improvements-reproductive
 cost total $640,341 376,404
 ─────────
 $430,433

Sales price per audit—
 Land and Bldg. $250,000
 spent $150,000 necessary repairs * * *"
The 1971 card was as follows:
"Land $ 41,750
Improvements-reproductive
 cost total $640,341 372,811
 ─────────

Total valuation $414,561"

Defendants' sworn answers to certain interrogatories propounded by plaintiff also were introduced into evidence. The following question and answer were included:

"Q12. Did the Assessor in determining the 1971 assessment on subject property use the fair cash market value thereof?
If the answer is "yes" then state:
a. The fair cash market value so used $_____?
b. The computations, including explanation of each based upon such fair market value, used by the Assessor to arrive at or determine the assessment for 1971?
Answer: Yes. $975,172.50 or assessed valuation ÷ 4.
(The foregoing phrase was inserted in ink.) Reproductive cost less depreciation is one way of measuring fair cash value. Income approach is another way, but inapplicable to factories, in general. Arms length non-depressed sale is another accepted method. As stated above, reproductive cost less depreciation was used for 1971 assessment."

Three expert witnesses testified for plaintiff at trial. Robert Heinzen, a real estate appraiser, testified that he made a detailed appraisal study of the property. Based on his personal inspection of the property and all pertinent documents, his familiarity and knowledge of real estate, he had an opinion that the fair market value of the property on December 31, 1971, was $365,000, with no change in value as of the date of trial, December 21, 1972. He testified that there were three approaches to value: reproduction cost, income or net rental, and market data. Heinzen believed that the market data approach was appropriate to the instant property.

Charles Podolsky, also an appraiser, testified that in his opinion the

market value of the property was $314,000. The $316,000 paid for the property by plaintiff in 1968 was a fair price at the time. Since no improvements had been added, Podolsky believed that the property had lessened in value, but only slightly. He further testified that plaintiff would sustain a financial loss if the assessed valuation remained at $414,561 and the taxes remained at $51,000.

E. L. Magnard testified that he had been supervisor of the property tax division of the Illinois Tax Commission for 31 years prior to his retirement. He testified that in accordance with the statute the Illinois Department of Local Governmental Affairs annually analyzes and then equalizes the level of assessment to market values among Illinois counties by assigning equalization multiples to each county. To accomplish this, the Department first accumulates all arms-length sales of real property in each county and compares the assessment to determine a sales/ assessment and median in the county. In Cook County, a random sampling of sales by classification is analyzed because of the volume of sales. These ratios are used as the basis for computing equalization multiples to equalize the level percentage of assessment to market value throughout the state to conform to the constitutional provision that all property be taxed uniformly in proportion to value.

Magnard further testified that the statistical results of such sales/ assessment ratios are published by the Department. The last two publications indicated that for Cook County Assessor's classification of industrial property, the median ratio in 1967 was 44%; in 1968 and 1969 it was 45%. The equalization multiples for Cook County in 1969 was 1.52; in 1970 and 1971 it was 1.59. A study made by the Real Estate Research Corporation on behalf of the Cook County Assessor stated that current statistical research of sales of real property discloses a sales/assessment ratio for industrial properties of 40 to 44% of market values in the sales researched. In Magnard's opinion the ratio of assessment to market value of less than 45% for industrial property had not changed.

At the close of plaintiff's case, the trial court granted defendants' motion for judgment. The propriety of that judgment order is the sole issue on appeal.

■■ Taxes are presumed to be just and the burden rests upon the objector, or the one assailing the tax to show its invalidity. (*People ex rel. McDonough v. New York Central R.R. Co.* (1933), 355 Ill. 80, 188 N.E. 807.) In the absence of fraud, courts have no power to review or determine the value of property fixed for purposes of taxation by the administrative offices to whom such function has been delegated; it is only when the valuation has been fraudulently made that it is subject to judicial review and mere overvaluation is not sufficient to estab-

lish fraud. (*People ex rel. Callahan v. Gulf, Mobile and Ohio R.R.* (1956), 8 Ill.2d 66, 132 N.E.2d 544.) In *People ex rel. Frantz v. M.D.B.K.W., Inc.* (1966), 36 Ill.2d 209, 221 N.E.2d 650, the Illinois Supreme Court set out at p. 211 the proof required to establish constructive fraud:

> "It is only where the property has been grossly overvalued, the assessed valuation being reached under circumstances showing either lack of knowledge of known values or a deliberate fixing of values contrary to the known value, that fraud in law will be inferred. Before the conduct of the taxing authorities will be considered constructive fraud, the evidence must clearly establish that the assessment was made in ignorance of the value of the property, or on a judgment not based upon readily ascertainable facts, or on a designedly excessive basis. [Citations.]"

In case of overvaluation it is not necessary that intentional fraud be shown but if the evidence clearly establishes that the assessment was made either in ignorance of the value of property or on a judgment not based upon readily obtainable facts or that the property was designedly excessively valued, such conduct on the part of the taxing authorities amounts to a constructive fraud. *People ex rel. Wangelin v. St. Louis Bridge Co.* (1934), 357 Ill. 245, 191 N.E. 300; *People ex rel. Wangelin v. Wiggins Ferry Co.* (1934), 357 Ill. 173, 191 N.E. 296; *People ex rel. Wangelin v. Gillespie* (1934), 358 Ill. 40, 192 N.E. 664.

■■ Article IX, §§ 4a and 4b of the 1970 Illinois Constitution provide:

> "4(a) Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law.
>
> 4(b) Subject to such limitations as the General Assembly may hereafter prescribe by law, counties with a population of more than 200,000 may classify or continue to classify real property for purposes of taxation. Any such classification shall be reasonable and assessments shall be uniform within each class. The level of assessment or rate of tax in the highest class in a county shall not exceed two and one half times the level of assessment or rate of the lowest class in that county.

And the law requires, if property within the taxing district is assessed on a debased proportion of the fair market value, all property shall be assessed on the same basis. *People ex rel. Rhodes v. Turk* (1945), 391 Ill. 424, 63 N.E.2d 513.

■■ We recognize that in cases tried without a jury, the trial judge, in deciding a defendant's motion for judgment at the close of plaintiff's case, shall weigh the evidence. (Ill. Rev. Stat. 1967, ch. 110, par. 64(5);

*Allfree v. Estate of Rosenthal* (1969), 113 Ill.App.2d 90, 251 N.E.2d 792.) We are also aware, as we have noted, that a plaintiff in a tax assessment case must prove its case by clear and convincing evidence because the presumption of validity attaches to every assessment of real estate. However, in the present case, in view of the evidence presented by plaintiff, the trial court erred in entering judgment for defendants at the close of plaintiff's case. Plaintiff offered evidence that it made an arms-length purchase of the property in 1968 for $316,000; that in the years involved, the fair market value of the property was at most $365,000; that the County Assessor's record for 1969 indicates that the sales price of the property was $250,000; and that in the years involved, there was a usual and uniform debasement of property, of like classification as the subject property, in Cook County for assessment and taxation purposes to 44% of market value. In addition, plaintiff introduced the significant evidence that in determining the tax the County Assessor, according to sworn answers to interrogatories, fixed the fair market value of the subject property at the amount of $975,172.50. That surprising figure or its source was not explained in the trial court, nor have defendants explained it in this court. It was error on the part of the trial court to enter judgment in favor of defendants at the close of plaintiff's case.

■■ Our Supreme Court recently has held that, where an adequate remedy at law exists, injunctive relief ordinarily is not available to an objecting taxpayer. (*Clarendon Associates v. Korzen* (1973), 56 Ill.2d 101, 306 N.E.2d 299.) When this court inquired at oral argument as to the effect of the *Clarendon* decision on the present case, the assistant State's Attorney representing defendants candidly stated that since the issue had not been presented to the trial court and had not been argued in defendants' brief in this court, the holding in *Clarendon* should not be applied to the present case.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings not inconsistent with the holdings of this opinion.

Judgment reversed and remanded.

DEMPSEY and McGLOON, JJ., concur.